**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        :
ROUTE 27, LLC, et al.,                  :
                        Plaintiff,      :        **Civil No. 10-3080 (FLW)**
                                        :
            v.                          :            **OPINION**
                                        :
GETTY PETROLEUM MARKETING, INC.,        :
et al.,                                 :
                                        :
                        Defendants.     :
_____:

**WOLFSON, United States District Judge:**

This matter arises out of a complaint initially brought in the Superior Court of New Jersey, Law Division, Middlesex County, by 31 gas service station dealers in New Jersey and Pennsylvania (collectively, "Plaintiffs") against Defendants Getty Petroleum Marketing, Inc. ("Getty"), Lukoil North America, LLC ("Lukoil"), Semyon Logovinsky, and Louis Maschi (collectively, "Defendants"). Presently before the Court are several motions by the parties: a motion to remand by Plaintiffs, a motion to amend by Plaintiffs, and a motion to dismiss by Defendants. For the reasons that follow, the Court grants Plaintiffs' motion to amend and Plaintiffs' motion to remand for lack of subject matter jurisdiction. In light of these rulings, Defendants' motion to dismiss is denied as moot.

1

## I.     BACKGROUND

Plaintiffs filed this action on May 17, 2010, in the Law Division of the Superior Court of New Jersey, Middlesex County.  Before serving the complaint on the Defendants, Plaintiffs filed an Amended Complaint on May 24, 2010, to correct the residence of one of the Plaintiffs, William Rossnagle.  The original complaint stated that he was a New Jersey resident.  His residence was corrected, in the Amended Complaint, to reflect that he is a Pennsylvania resident. Both the original complaint and the Amended Complaint state that several of the plaintiffs are Pennsylvania residents and that Defendant Semyon Logivinsky is also a resident of Pennsylvania.  The remaining defendants are residents of New Jersey, Maryland, New York, and Delaware.

Substantively, the Amended Complaint asserts claims related to Defendant Getty's acquisition of 308 Mobil-branded service stations from ConocoPhillips Company ("Conoco").  Am. Compl., ¶ 38.  Per that agreement, the Amended Complaint asserts, Conoco assigned its franchise agreements with Plaintiffs to Getty, and Getty became a franchisor to Plaintiffs.  Id. at ¶ 39.  Once Getty became Plaintiffs' franchisor, Getty allegedly rebranded the service stations from the "well-known, established Mobil brand" to the "relatively unknown LUKOIL brand."  Id. at 40.  In 2009, the Amended Complaint further alleges, Getty completed additional sales and assignments of Plaintiffs' interests in their service stations "without providing Plaintiffs a bona fide offer or right of first refusal"

as required by the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1, et seq. ("NJFPA"), in order to satisfy Getty's short-term debt obligations.  Id. at ¶¶ 41-43.

Based on these allegations, the Amended Complaint brings the following claims: Count 1— an NJFPA claim against Defendants Getty and Lukoil; Count 2 –  a conspiracy claim against all Defendants; Count 3 — a tortious interference with contractual rights claim against all Defendants; Count 4 – a tortious interference with prospective economic advantage claim against all Defendants; and Count 5 – a constructive trust claim against Getty and Lukoil.  As to Defendant Logovinsky in particular, the Amended Complaint alleges that Logovinsky was Getty's Vice President of Wholesale and Business Development, Am. Compl., ¶ 35, and that Getty and Lukoil acted through him and other officers and directors in committing the conspiracy and tortious interference claims.  The Amended Complaint, further, alleges that Defendant Maschi "is [sic] Real Estate Manager at LUKOIL." Id. at ¶ 36.  In essence, the Amended Complaint sought to impose individual liability against Logovinsky and Maschi for Lukoil's alleged acts related to those claims.

Defendants removed the suit to this Court on June 11, 2010 based on diversity jurisdiction under 28 U.S.C. § 1332.  In their removal petition, Defendants contend that "[t]here are no averments in the Complaint directed specifically to Logovinsky [or Maschi] setting forth the basis for any claims against [them], and [their] joinder . . . is fraudulent and intended solely to defeat jurisdiction in the federal courts."  Def. Notice of Removal, ¶¶

10-11. Defendants, primarily, challenge Logovinsky's joinder because he is a Pennsylvania resident and it is his presence that, along with two of the plaintiffs that also reside in Pennsylvania, destroys diversity here.

After the suit was removed, Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), asserting various grounds, including, *inter alia*, federal preemption of the NJFPA. Shortly thereafter, Plaintiff filed a motion for leave to file a Second Amended Complaint. The Second Amended Complaint includes the same parties named in the original and Amended Complaint, but seeks to add further, detailed allegations against Logovinsky and Maschi. Importantly, the Second Amended Complaint also adds Logovinsky to the NJFPA count.

Specifically, the Second Amended Complaint alleges that Logovinsky was Getty's Vice President of Wholesale and Business Development, id. at ¶ 35, and that, as a director and officer, he "actively participated in the management of Getty and had power and influence over its policy making ...." Id. at ¶ 48. Further, the Second Amended Complaint asserts that Logovinsky "exercised direct authority over all aspects of Getty's marketing and property acquisition and sale activities and, upon information and belief, directly participated in the violation of the [NJFPA] alleged herein." Id. at ¶ 37. According to the Second Amended Complaint,

> [n]o important decisions were made by Getty, or subsequently by LUKOIL, without Defendant Logovinsky's agreement, and

> Defendant Logivinsky [sic] was at all relevant times the key individual within Getty, and subsequently within LUKOIL, who reported directly to the managers of LUKOIL's parent OAO LUKOIL.

Id.  Finally, the Second Amended Complaint asserts, Logovinsky had or has interests in Arfa Enterprises, Inc. and Arfa Real Estate Holding, LLC, "one or both of which have been involved in the acquisition of service station properties from Getty and the subsequent operation of those service station properties." Id.

With respect to Defendant Maschi, the Second Amended Complaint alleges that Maschi served, initially, as a Real Estate Manager for Getty and, subsequently, for Lukoil. Id. at ¶ 36. The Second Amended Complaint, further, alleges that he "exercised direct authority over Getty's property acquisition and sales activities and, upon information and belief, directly participated in the violation of the [NJ]FPA alleged herein." Id. Maschi, unlike Logovinsky, is not added to the NJFPA count.

Following its motion to amend, Plaintiffs then filed a motion to remand for lack of diversity jurisdiction. The Court now rules upon the parties' sundry motions, turning first to the motion to amend.

## II.    MOTION TO AMEND

While, typically, the Court would consider a pending motion to remand for lack of subject matter jurisdiction before reaching a pending motion to amend, the Court addresses the latter first in light of the parties' dispute over which complaint should govern the

Court's jurisdictional analysis.

Under Federal Rule of Civil Procedure 15(a), as amended effective December 1, 2009, "a party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, the party must seek leave of court to amend. Id. at 15(a)(2).

Here, while Plaintiffs have sought leave to amend out of an abundance of caution, leave to amend need not be sought. It is clear from the face of Rule 15(a) that Plaintiffs are entitled to file the Second Amended Complaint *as a matter of right*. Rule 15 grants a plaintiff the right to file an amended complaint within "21 days after service of a motion under Rule 12(b) . . .," such as a motion to dismiss brought pursuant to Rule 12(b)(6). Id. at 15(a)(1)(B). Accord Kundratic v. Thomas, No. 09-3285, 2011 WL 208636, *3 (3d Cir. Jan. 25, 2011) (noting that a plaintiff may file an amended complaint after the defendant has "filed [its] first motion to dismiss"). Plaintiffs sought to amend their complaint on July 8, 2010, which is exactly 21 days after Defendants' motion to dismiss was filed on June 17, 2010.

Indeed, in their briefing, Defendants do not contend that Plaintiffs may not file their Second Amendment Complaint as of right. Rather, Defendants argue that Plaintiffs filed the Second Amended Complaint solely for the purpose of defeating diversity and that no

meritorious claims are brought against Logovinsky.  On this basis, Defendants seek to have the Court apply a subsection of one of the removal statutes, 28 U.S.C. § 1447(e), to deny Plaintiff's request for leave to amend.  Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  Id.

Defendants' argument must be rejected.  As an initial matter, section 1447(e), by its own terms, does not apply to Plaintiffs' amendment.  The statute encompasses only those amendments that "seek[ ] to join additional *defendants* ...."  Id. (emphasis added).  Plaintiff's Second Amended Complaint did not add any new defendants; it added the already-named Defendant Logovinsky to the NJFPA claim and added more detailed allegations against Logovinsky and Maschi.[1]  Moreover, because the Court concludes that Plaintiffs may amend as of right under Rule 15(a)(1), the Court may not reach the underlying motivations or merits of Plaintiffs' amendment via that rule.[2]  It is only in connection with an

---

[1]      At least one court has held that an amendment that seeks to materially change the relationship between the parties, by converting a third-party defendant into a direct defendant, also falls within the ambit of section 1447(e).  Perez v. Arcobaleno Pasta Machines, Inc., 261 F.Supp.2d 997, 1000 (N.D. Ill. 2003).  Here, in contrast, there is no material change in either Logovinsky's or Maschi's role in the Second Amended Complaint where they were already named as direct defendants in the Amended Complaint.

[2]      Defendants' citation to this Court's prior ruling in Midthassel v. Aramark Corp., No. 09-5515, 2010 WL 2521977 (D.N.J. Jun. 15, 2010), is, therefore, inapposite.  Midthassel, unlike here, involved an attempt to amend to add additional defendants whose

amendment under Rule 15(a)(2), where a party did not file within the 21 days following the filing of a motion to dismiss, that the Court might engage in a futility analysis analyzing the merits of Plaintiffs' Second Amended Complaint.  See Kundratic, 2011 WL 208636 at *3 (noting that, in connection with motion for leave to amend under Rule 15(a)(2), " a district court need not grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted.") (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)) (internal quotations marks omitted).   Accordingly, Plaintiff's motion for leave to amend is granted.

## III.   MOTION TO REMAND

District courts have original jurisdiction over matters in which the amount in controversy exceeds $ 75,000 and there is complete diversity of citizenship between the parties.  28 U.S.C. § 1332.[3]  In determining whether diversity exists, the Court's inquiry must focus on facts that existed at the time the complaint was filed.  Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 151 (3d Cir. 2009); Pierro v. Kugel, 386 Fed.Appx. 308, 309 (3d Cir. 2010) (citing Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995)). While the burden to prove the existence of jurisdiction is generally on the plaintiff, where

---

inclusion would destroy diversity.  Id. at *3.  In addition, Midthassel applied the pre-2009 version of Rule 15(a), which did not grant plaintiffs the right to file an amended complaint without leave of court within 21 days of a motion to dismiss .  Id. at *3 n.3.

[3]     The parties do not dispute that the amount in controversy requirement is met here.

a timely challenge to removal has been filed, the burden rests on the removing defendant to demonstrate jurisdiction.  Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009); Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 359 (3d Cir. 1995).  Any doubts in removal jurisdiction are resolved in favor of remand.  Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004).

In support of its motion to remand, Plaintiff argues that there is a lack of complete diversity amongst the named Plaintiffs and Defendants.  On the other hand, Defendants argue that Plaintiffs fraudulently joined Defendant Logovinski for the sole purpose of defeating diversity jurisdiction and that, consequently, the Court should refuse to remand. While Defendants assert that both Logovinski and Maschi were fraudulently joined, only Logovinski's joinder is pertinent to the question of diversity; Mashi, unlike Logovinski, is a New Jersey resident.  Hence the Courts' fraudulent joined analysis will focus upon the joinder of Logovinski.

Defendants are correct that fraudulent joinder for the purpose of defeating diversity is "an exception to the requirement that removal be predicated solely upon complete diversity."  In re Briscoe, 448 F.3d 201, 216 (3rd Cir. 2006).[4]  According to the Third Circuit,

---

[4]      To be clear, the standard applied to an assertion of fraudulent joinder under the diversity statute differs from that applicable to a motion to amend under 28 U.S.C. § 1447(e), where the plaintiff seeks to add, after removal, additional defendants whose inclusion would defeat diversity. Compare id. at 217-18 with Midthassel, 2010 WL 2521977 at *4-5 (describing the "Hensgens" factors to be analyzed in connection with a § 1447(e) motion to amend).  See Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987)

> [j]oinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, *if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper* and remand the case to state court....

Id. at 217 (quoting Batoff v. State Farm Ins. Co., 977 F.2d 848 (3d Cir. 1992)) (emphasis added).  In short, for Defendants to meet their burden under this test, they must show that there is no possibility that New Jersey law would recognize any of the claims asserted against Defendant Logovinski.[5]  This burden is a heavy one.  Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009); Wright & Miller, Federal Practice & Procedure, 14B Fed. Prac. & Proc. Juris. § 3723 n.105 (4th ed.).

In assessing whether the plaintiff has asserted a colorable claim, the Court must "assume as true all factual allegations in the complaint."  Brown, 575 F.3d at 327.  Thus, as a threshold matter, the Court must determine under which complaint it will adjudge whether Plaintiffs have asserted colorable claims against Logovinski.  While the Amended

discussed in City of Perth Amboy v. Saveco Ins., Co., 539 F.Supp.2d 742, 746 (D.N.J.2008).

[5]    Defendants do not persuasively argue that Plaintiffs had no real intention in good faith to prosecute Defendants Logovinski and Maschi.  While Defendants note in their briefing that plaintiffs do not claim "a real intention in good faith to pursue a judgment against the two individual defendants," Def. Opp. Mot. Remand at 9, it is the Defendants' burden to demonstrate this fraudulent joinder factor.  Hence the Court's analysis focuses solely on whether Plaintiffs have asserted colorable claims against these defendants.

Complaint asserts a conspiracy claim, tortious interference with contractual rights claim, and tortious interference with prospective economic advantage claim against both Logovinski, the Second Amended Complaint further asserts a NJFPA claim against him and adds further detailed allegations as to his conduct.  Defendants argue that the Court may consider only the Amended Complaint because "[p]ost-removal amendments must be disregarded."  Def. Opp. Remand at 6.

At least one court has held, in a factually similar circumstance, that the operative complaint for assessing diversity jurisdiction on a motion to remand is the most-recent, properly amended complaint.  In Perez v. Arcobaleno Pasta Machines, Inc., 261 F.Supp.2d 997 (N.D. Ill. 2003), that court reasoned that "once an amended pleading is filed, the amended pleading supersedes the original one, and the original pleading has no function in the case . . . [thus] federal jurisdiction will be determined based on that [latter] complaint."  Id. at 999.  In support of its reasoning, the court cites Seventh Circuit authority and Charles Wright, Arthur Miller & Mary Kay Kane, 6 Federal Practice and Procedure § 1476 at 556-57 (1990), which authorities interpret Federal Rule of Civil Procedure 15(a).  Furthermore, other cases hold that, when the plaintiff voluntarily amends a complaint, "courts look to the amended complaint to determine jurisdiction."  Rockwell Int'l Corp. v. U.S., 549 U.S. 457, 473-74 (2007); .  But those cases address circumstances in which a plaintiff filed initially in federal court; they do not apply to removal cases.  Id. at 474, n.6

(distinguishing removal cases).

Defendants, in contrast, cite primarily to <u>Lewis v. World Boxing Council</u>, 914 F.Supp. 1121 (D.N.J. 1996) and <u>Deutsch v. Turner Corp.</u>, 324 F.3d 692 (9th Cir. 2003), in support of the contention that the complaint in effect at the time of removal governs a fraudulent joinder analysis. <u>Deutsch</u> is not helpful to Defendants because that matter involved an amendment to add a federal claim to a removed complaint and, thereby, eliminate diversity as a basis of the court's jurisdiction.[6]  Amendments of this character differ from amendments that augment the diversity allegations.  <u>See</u> Wright & Miller, Federal Practice & Procedure, 14B Fed. Prac. & Proc. Juris. § 3723 (4th ed.) ("The district court's inquiry cannot be limited to the complaint, as it often can be when removal is based on federal question jurisdiction, because certain matters critical for determining diversity jurisdiction, such as the citizenship of the parties or the amount in controversy, may not appear in the state court complaint.").

Defendants' citation to <u>Lewis</u>, however, is appropo.  That court states that the court must "focus on the plaintiff's complaint at the time the petition for removal was filed" in

---

[6]     Defendants, further, cite to Moore's Federal Practice for this proposition. However, review of the treatise reveals that Defendants quoted the treatise out of context. Defendants quotes the treatise as stating that "[p]ost-removal amendments to the complaint . . . do not bear on the evaluation of federal jurisdiction."  Def. Opp. Remand at 6.  Read in context, the quote states "[p]ost-removal amendments to the complaint *that assert federal claims* do not bear on the evaluation of federal jurisdiction."  16 Moore's Federal Practice § 107.41[1][e][ii] (emphasis added).

evaluating whether a non-diverse defendant was fraudulently joined. 914 F.Supp. at 1124. This statement of law was first made by the Third Circuit in <u>Abels v. State Farm Fire & Casualty Co.</u>, 770 F.2d 26, 29 (3d Cir. 1985) <u>cited in</u> <u>Steel Valley Authority v. Union Switch and Signal Div.</u>, 809 F.2d 1006, 1010 (3d Cir. 1987), a case, while dated, continues to be cited as good law in this Circuit. <u>See</u> <u>In re Briscoe</u>, 448 F.3d at 216 (citing <u>Abels</u>); <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 666 (3d Cir. 2002) (citing <u>Steel Valley</u>'s quote of <u>Abels</u>' language); <u>First American Title Ins. Corp. v. JP Morgan Chase & Co.</u>, 384 Fed.Appx. 64, 67 (3rd Cir. 2010); <u>Little v. Doe</u>, No. 09-5183, 2010 WL 3812364, *5 (D.N.J. Sep 28, 2010). In <u>Abels</u>, the plaintiff sought leave to amend the complaint after removal. Rather than focusing on the proposed post-removal amended pleading, however, the <u>Abels</u> court looked to the complaint in effect at the time of removal. 770 F.2d at 29.

While Abels pre-dates the recent amendment to Rule 15(a) that authorized the Plaintiffs here to amend their complaint as of right, its holding and subsequent Third Circuit precedent strongly suggest that the Court must look to the complaint in effect at the time the removal petition was filed in ascertaining jurisdiction. This means that the Court should rely upon the Amended Complaint in connection with the jurisdiction analysis. Ultimately, however, it is of little significance whether the Amended Complaint or the Second Amended Complaint governs because Defendants fail to demonstrate fraudulent joinder under either complaint.

My fraudulent joinder analysis is guided by Boyer v. Snap-on Tools Corp., 913 F.2d 108 (3d Cir. 1990), a case that applies Abels' fraudulent joinder test to facts similar to the case at hand.  The plaintiffs in Boyer filed suit in Pennsylvania state court against a defendant car dealership based on an alleged improper termination of the parties' dealership agreement.  In addition to the dealership, the plaintiffs named the dealership's branch manager and field manager as co-defendants.  The plaintiffs alleged that these individual defendants made misrepresentations that lead to the ultimate termination of the dealership agreement.  Id. at 110.  Contending that the individual defendants were fraudulently joined, the defendants removed to federal district court.  The district court accepted the defendants' fraudulent joinder argument and remanded to state court, holding that a release in the parties' dealership agreement foreclosed any cause of action against the defendants.  Id.

On appeal, the Third Circuit disagreed with the district court's analysis.  In the appellate court's view, the district court overstepped its bounds by inappropriately "pierc[ing] the pleadings to determine whether there ha[d] been a fraudulent joinder." Id. at 112.  After noting that there was no suggestion that the plaintiffs made false citizenship allegations, the court addressed whether the causes of action against the individual defendants were defective as a matter of law:

> this is not a case where the action against the individual defendants is defective as a matter of law. See 1A Moore's

14

> Federal Practice ¶ 0.161[2] at 274 ("The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state."). Under Pennsylvania law there is a cause of action against employees whose fraud and misrepresentations contributed to plaintiff's damages, even if these actions were taken in the course of their employment. See Loeffler v. McShane, 372 Pa.Super. 442, 446-47, 539 A.2d 876, 878 (1988) (quoting Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 621, 470 A.2d 86, 90 (1983)).

Id. at 111-12. Based upon this simply inquiry–whether Pennsylvania generally recognizes a cause of action against individual defendants for actions taken in the course of employment—the court concluded that the plaintiffs did not fraudulently join the individual defendants.

In light of Boyer's call for a circumscribed analysis, this Court need not engage in a detailed inquiry regarding the elements of each claim asserted against Logivinsky. Defendants suggest that a more searching inquiry is needed; in their briefing, they analyze each of Plaintiff's claim in a manner more akin to that occasioned by a motion to dismiss. See Def. Opp. Mot. Remand at 7 (citing Brunswick Chrysler-Plymouth, Inc. v. Mazda Motors, 1992 U.S. Dist. LEXIS 22790, 7-10 (D.N.J. 1992)).[7] But, the Third Circuit has made

---

[7]     Defendants rely upon the Brunswick case in support of their position. According to Defendants, Brunswick stands for the proposition that a franchisor's employee who was sued for tortious interference was fraudulently joined. However, since Brunswick pre-dates the Third Circuit decisions stating that the motion to dismiss standard is inappropriate, the Brunswick court's application of that standard renders its holding unpersuasive here.

clear in its fraudulent joinder jurisprudence that it is error for a district court to "convert its jurisdictional inquiry into a motion to dismiss." Briscoe, 448 F.3d at 218; Workman v. Stryker Corp., No. 09-4947, 2010 WL 2521819 (D.N.J. Jun. 11, 2010) ("An inquiry under a motion to dismiss or for summary judgment 'is more searching than that permissible when a party makes a claim of fraudulent joinder'") (quoting Batoff, 977 F.2d at 852).  To the contrary, it is enough for the Court to consider, on a more rudimentary level, whether New Jersey law recognizes claims brought against an individual defendant for actions taken within the scope of his employment.

In the Second Amended Complaint, Plaintiffs assert a NJFPA claim against Logovinsky in addition to the conspiracy and tortious interference claims.  While there is no case law directly addressing whether an individual may be liable under the NJFPA, the statutory definition of "franchisor" is "a person who grants a franchise to another person" and the definition of "person" includes corporate officers.  See N.J.S.A. 56:10-3b ("'Person' means a natural person, corporation, partnership, trust, or other entity and, in case of an entity, it shall include . . . the individual officers, directors, and other persons in active control of the activities of each such entity.").  Plaintiffs' NJFPA claim is premised on N.J.S.A. 56:10-6.1, which precludes franchisors from selling or assigning their interests in

---

Defendants, further, argue that the motion to dismiss standard is appropriate where there is a motion to dismiss pending at the time the remand motion is filed.  There is no basis in the case law for this contention and the Court rejects it.

a franchisee-gas station without first making a bona fide offer to the franchisee.  Thus, under the plain language of the NJFPA, Plaintiffs have stated a colorable NJFPA claim against Logovinski in the Second Amended Complaint.

With respect to the Amended Complaint, Plaintiffs assert colorable claims against Logovinsky under that complaint as well.  As noted, the Amended Complaint asserts tortious interference and conspiracy claims against Logovinsky.  In New Jersey, under that state's participation theory, "a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 303 (2002).  "[T]he essential predicate for application of the theory is the commission by the corporation of tortious conduct, participation in that tortious conduct by the corporate officer and resultant injury to the plaintiff." Id. at 308.  Moreover, New Jersey "appl[ies] the participation theory to hold corporate officers personally liable for certain statutory violations." Id. at 305; Allen v. V and A Bros., Inc., 414 N.J.Super. 152 (App. Div. 2010) (applying Saltiel's participation theory to a New Jersey Consumer Fraud Act claim).

Plaintiffs' tortious interference and conspiracy claims, as alleged in the Amended Complaint, are premised on Logovinski's alleged participation in Lukoil's violation of the Franchise Practices Act and alleged interference with Plaintiffs pre-existing agreement with Getty.  Plaintiffs have stated a colorable claim under New Jersey law against both

Logovinski and Maschi for their participation in Lukoil's alleged wrongful acts under

Saltiel.  Accord Freichs v. Lifestar Response Corp., No. 09-4460, 2009 WL 3754190, *2 (D.N.J.

Nov. 5, 2009) (holding that defendant-employee was not fraudulently joined in New Jersey

Law Against Discrimination complaint against employer, even though complaint did not

assert specific aiding and abetting allegations and was otherwise "sparse").

　　　　This is not to say that Plaintiffs' allegations are sufficiently specific to satisfy the

more rigorous motion-to-dismiss standard.  Indeed, the Court questions whether Plaintiffs'

tortious interference and conspiracy allegations could withstand such a motion.

Nevertheless, "whether this Court has jurisdiction pursuant to 28 U.S.C. § 1332 is a

preliminary determination that is wholly separate from an evaluation of the merits of the

claims asserted."  Freichs,  2009 WL 3754190 at *2.  See Abels, 770 F.2d at 32 (finding no

fraudulent joinder despite the "substantial question whether California [law] gives

plaintiffs a cause of action against employees and agents of an insurance company.")

Defendants are free to re-file their motion to dismiss in state court to re-assert the

substantive challenges it raised here to the state law claims.[8]  Having found no fraudulent

joinder on Plaintiffs' part in stating claims against Defendant Logovinski under either the

Second Amended or Amended Complaint, the Court concludes that it does not have

_____

　　　　[8]　　　If Defendant Logovinski is dismissed from the suit on remand, the remaining
Defendants may again remove to this Court.

subject matter jurisdiction over the suit.[9]

Defendants make several arguments worth addressing, although none warrant a contrary result.  First, Defendants argue that Plaintiffs' allegations against Logovinky are based on a contract violation and, therefore, do not fall within Saltiel's participation theory. Whether a claim sounds in contract versus tort is a nuanced determination that would require this Court to pierce Plaintiffs' pleadings.  As noted by the New Jersey Supreme Court in Saltiel, "the boundary line between tort and contract actions is not capable of clear demarcation." 170 N.J. at 309-10; see id. at 310 (setting forth seven-part test).  Moreover, to the extent Plaintiffs' claims against Logovinsky are based on Lukoil's alleged statutory, as opposed to contract, violations, Defendants' argument is of no moment.   Second, Defendants argue that the conspiracy claim cannot stand because an officer may not conspire with its employer.  The problem with this argument is that, even assuming Defendants' characterization of New Jersey law is accurate and that application of that law is appropriate under a fraudulent joinder analysis, the Amended Complaint does not explicate the corporate relationship between Getty, Lukoil, and Logovinsky, such that the Court could discern whether New Jersey law would bar Plaintiffs' conspiracy claim on the

---

[9]        In reaching my fraudulent joinder ruling, I do not rely on the Gill Affidavit. Thus, I do not address Defendants' challenges to that affidavit.

basis Defendants assert.[10]

Thirdly, Defendants argue that the New Jersey Appellate Division decision in <u>Tynan v. General Motors Corp.</u>, 248 N.J.Super. 654 (App. Div. 1991) <u>rev'd in part by</u> 127 N.J. 269 (1991), held that tortious interference claims are barred by the NJFPA.  <u>Tynan</u>, however, involved a tortious interference claim brought by a putative franchisee who was denied the right to purchase a dealership and, consequently, did not have standing to bring a claim under the NJFPA.  <u>Id.</u> at 669-70.  That case does not stand for the proposition that all tortious interference claims relating to an alleged Franchise Practices Act violation are barred by New Jersey law.  <u>Id.</u> at 671 ("[I]t can hardly be suggested that statutory rights adopted for the benefit of a franchisee can be the basis for a common-law suit *on behalf of someone not protected by the Act.*  The statute provides a remedy to a specific class of protected persons, existing 'franchisees,' and only to that class.") (emphasis added).

Finally, Defendants urge the Court to drop the two Pennsylvania station-owner

---

[10]   Defendants make a similar argument with respect to the tortious interference claims, contending that Getty, Lukoil, and their respective employees are all parties to the contract with Getty.  The Court's analysis of the conspiracy claim applies with equal force to these claims.  There is no basis in the Amended Complaint for the Court to discern the corporate relationship between Getty and Lukoil.  The Amended Complaint alleges merely that Getty sold and assigned its interests in Plaintiffs' stations to Lukoil, Am. Compl., ¶ 1, 40, and describes Lukoil as a wholly-owned subsidiary of "OAO LUKOIL."  <u>Id.</u> at ¶ 34.  Furthermore, while allegations in the Second Amended Complaint suggest that Logovinksy and Maschi worked "initially at Getty and subsequently at Lukoil," <u>see</u> Second Am. Compl., ¶¶ 36 -37, that does not affect the Court's conclusion that Plaintiffs have asserted a colorable NJFPA claim in the Second Amended Complaint against Logovinsky.

plaintiffs from this suit under Federal Rule of Civil Procedure 21.[11]  That rule provides that

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed.R.Civ.P. 21.

This rule "invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989).  "Resort to Rule 21 is appropriate where 'requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." Balgowan v. State of N.J., 115 F.3d 214, 217 (3d Cir. 1997) (quoting Newman-Green, 490 U.S. at 836).  Furthermore, district courts must consider whether dismissing a nondiverse party would prejudice any of the parties in the litigation.  Newman-Green, 490 U.S. at 838.

In addition, a court may not drop a party in order to obtain diversity jurisdiction where that party is indispensable. Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 421 (3d Cir. 2010).  Indispensability is determined by Federal Rule of Civil Procedure

---

[11]     While Defendants state in the briefing that "[a]lternatively, the Court could sever the claims of all plaintiffs against Logovinsky and send those claims back to state court," Def. Opp. Mot. Remand at 27, Defendants present no argument in support of this contention.  Defendants, further, while stating that Logovinsky is a dispensable party, present no argument in support of that contention either.

19(a)(1), which provides:

> A person ... must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1).

As an initial matter, the Court takes issue with Defendants' argument that Plaintiffs have failed to argue that the Pennsylvania plaintiffs are indispensible—it is Defendants' burden, in requesting that these plaintiffs be dropped, to demonstrate that they are dispensible.  In that connection, Defendants argue that each of the Pennsylvania plaintiffs have their own rights and may pursue their claims in state court separate from their New Jersey co-plaintiffs.  Plaintiffs respond that dropping the Pennsylvania plaintiffs would create unnecessary parallel litigation and waste judicial resources, especially in light of the early stage of litigation in which this case is poised.

Defendants may be correct that the Pennsylvania plaintiffs are dispensible parties, see Mortellite v. Novartis Crop Protection, Inc., 460 F.3d 483, 494 (3d Cir. 2006) (dismissing John Doe plaintiffs because "the named plaintiffs can obtain complete relief without [their] presence"), but that does not end the Rule 21 inquiry.  Courts often utilize Rule 21 to drop

a nondiverse party after "the case proceeds to trial and judgment [and] issues of judicial economy prevail." CGB Occupational Therapy, Inc. v. RHA Health Services Inc., 357 F.3d 375, 382 n.6 (3d Cir. 2004); see Publicker Industries, Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir. 1979) (dismissing nondiverse party following bench trial).  Here, in contrast, Plaintiffs' suit is in its nascent stage and there have been no rulings on the merits which merits, not incidentally, involve questions of state law. Compare Zambelli, 592 F.3d at 422 (finding defendant dispensable where preliminary injunction had been granted). Rather than conserving judicial resources, dropping the Pennsylvania plaintiffs at this early stage of litigation would waste judicial resources by creating parallel litigation.  In this regard, the Court further finds that dropping the Pennsylvania plaintiffs would not be "just"—those plaintiffs would be forced to re-file their own separate action(s) and lose the cost-saving benefits of joint litigation with their co-plaintiffs.

The Court emphasizes that it has already concluded that Defendant Logovinsky was not fraudulently joined and Defendants' removal based on purported diversity jurisdiction was, therefore, improper.  This fact suggests to the Court that Defendants' attempt to utilize Rule 21 in this context may be an attempt to "end-run" around Third Circuit fraudulent joinder jurisprudence.

For these reasons, the Court declines to exercise its discretion in dismissing the Pennsylvania plaintiffs pursuant to Rule 21.  Indeed, Defendants have not argued or

pointed to any law to suggest that, the Court is required to dismiss a nondiverse party at the early stages of litigation for the sake of creating diversity after ruling that a plaintiff has not fraudulently joined defendants in order to destroy diversity.  See Wright & Miller, FEDERAL PRACTICE & PROCEDURE, 7 Fed. Prac. & Proc. Civ. § 1685 (3d ed.) (noting that, while a court *may* drop nondiverse parties under Rule 21, "[o]f course, dismissal is not required; the presence of the joined party may be ignored in passing on a motion to remand or transfer.")  Accordingly, Plaintiffs motion to remand is granted.[12]

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motions to amend and remand to state court.  Defendants' motion to dismiss is denied as moot and may be re-filed in state court upon remand.  An appropriate Order will follow.


Dated: March 29, 2011                                    /s/ Freda Wolfson
                                                         Honorable Freda L. Wolfson
                                                         United States District Judge

---

[12]      Because Plaintiffs' motion to remand is granted for lack of subject matter jurisdiction, I do not reach Plaintiffs' alternative argument that Pullman abstention warrants a stay of the action.